UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRY GORDON,

        Plaintiff,

    v.

D. DEMOTT, et al.,

        Defendants.

Case No.  20-cv-01591-JSW

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO SUBPOENA WITNESS**

(Dkt Nos. 53, 68)

## INTRODUCTION

Plaintiff, an inmate at the Santa Rita Jail, filed this pro se civil rights action under 42 U.S.C. § 1983.  The remaining claim is that two deputies at the jail violated his Fourteenth Amendment right to due process by failing to protect him from pain and injury when they drove him back to the jail from a hospital after surgery.  The two Defendants filed a motion for summary judgment, Plaintiff filed an opposition, and Defendants filed a reply brief.  For the reasons discussed below, Defendants' motion is GRANTED IN PART AND DENIED IN PART. Defendants' motion for an extension of time is GRANTED.

## BACKGROUND

The following facts are not in dispute unless otherwise noted.

In September 2019, Plaintiff was an inmate at the Santa Rita Jail in Dublin, California.  On September 20, 2019, he was taken by ambulance to the Stanford Medical Center for surgery to treat spinal stenosis in his neck, which included implanting surgical hardware.  On September 23, 2019, Defendants Deputy DeMott and Deputy Vancott drove to the jail to provide security for Plaintiff.  Plaintiff's nurse told Defendants and Plaintiff that the surgeon decided that he would be discharged that day.  Plaintiff was still in pain, and he could not stand or walk well on his own.

1   Plaintiff explained to Vancott that the surgeon had previously told him that he would stay at the

2   hospital for two weeks after surgery.  Vancott raised this concern with the nurse, but she

3   responded that the surgeon found that he was medically fit to return to the jail that day.  Plaintiff

4   states that he heard the nurse tell Defendants outside of his hospital room that the reason the

5   surgeon decided to discharge him that day was because of complaints about him from other people

6   in the hospital.  The discharge papers prepared that day indicated to Defendants that Plaintiff was

7   fit to return to the jail.

8       DeMott asked the nurse whether Plaintiff needed to be transported in an ambulance, as

9   opposed to the jail van.  He also told her that the van had metal seats without cushions.  The nurse

10  told him that Plaintiff's medical condition did not require an ambulance and the van would suffice.

11  The discharge papers also did not indicate any limitation on how to transport Plaintiff.  Defendants

12  requested a wheelchair, and a nurse used one to bring Plaintiff outside to the van.

13      Defendants opened the rear doors outward to allow Plaintiff to sit in the rear-facing seats

14  that were directly accessible from there.  In his Complaint, Plaintiff alleged that Defenadnts picked

15  him up and put him in the van, but in his deposition, he testified that they helped him get into it.

16  Video footage from Vancott's body-worn camera shows Defendants gave Plaintiff physical

17  support to stabilize him, and they retrieved a sandbag to help him step up into the van because the

18  height of the van was making it difficult for him to step into it on his own.  In his Complaint,

19  Plaintiff also alleged that his hands and legs were cuffed from the ride, but he conceded at his

20  deposition that once he was seated, Defendants uncuffed one of his hands to allow him to drink

21  from his water bottle on the ride home.  The space was tight, with approximately 3.5 feet on either

22  side of him, and an arm's length to the rear doors.

23      The ride back to the jail took over an hour, during which Plaintiff wore a surgical collar.

24  However, Plaintiff felt "very, very hard shocking pain" in his neck and back on every bump and

25  turn.  (ECF No. 1 at 4.)  Defendants heard Plaintiff whimper when they drove over bumps on the

26  Dumbarton Bridge, but they did not hear him during the rest of the ride.  When they arrived at the

27  jail, Vancott went to look for a wheelchair, but Plaintiff walked the 50 yards to his cell.

28  According to Plaintiff, DeMott told him that Vancott could not find a wheelchair and that he

United States District Court
Northern District of California

2

1    would have to walk to his cell.  According to Defendants, Plaintiff got out of the van on his own,

2    told them he would prefer to walk on his own, declined their assistance, and used the wall to brace

3    himself for the 50-yard walk to his cell.

4          Plaintiff spent the next four months recovering in the jail's outpatient clinic.  On the first

5    day, a doctor found no indication that his condition had worsened during the ride to the jail and

6    that his condition had improved since before the surgery.  She monitored his recovery over the

7    next four months and found improvement in his limb strength from physical therapy, he went off

8    narcotics, and he healed without complications.  His surgeon reviewed an x-ray in October 2019

9    and found that the hardware in his neck was in a good position and that he had good cervical

10   alignment.  Plaintiff sustained a "dip" --- i.e., a concavity --- in his neck from displacement of the

11   rods, and he continued to feel pain after he left the clinic in January 2020.  According to Plaintiff,

12   the displacement of the rods occurred on the ride back from the jail, and he showed it to his jail

13   doctor a week later.  Plaintiff asserts that she "hid" this from his surgeon when he reviewed

14   Plaintiff's x-ray.[1]

                                         **DISCUSSION**

**I.    <u>Standard of Review</u>**

          Summary judgment is proper where the pleadings, discovery and affidavits show that there

is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the

case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is

genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

party. *Id.*

          The moving party for summary judgment bears the initial burden of identifying those

portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

issue of material fact. *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party

has met this burden of production, the nonmoving party must go beyond the pleadings and, by its

---

[1] Plaintiff assertions about the medical care he received from jail personnel following his return
from the hospital are not relevant to his claims against Defendants.

United States District Court
Northern District of California

own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

**II.   Discussion**

Plaintiff claims that Defendants violated his constitutional rights by failing to protect him from harm when they drove him back to the jail in a van instead of an ambulance, and when they did not provide him a wheelchair to walk from the van to the jail infirmary after returning to the jail.

A pretrial detainee instead is protected from punishment without due process under the Due Process Clause of the Fourteenth Amendment, an inmate bringing a failure-to-protect claim must show that the prison official acted with deliberate indifference. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc). The elements of a pretrial detainee's due process failure-to-protect claim against an individual officer are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* (footnote omitted). With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case. *Id.*

There is no dispute that Defendants' intentionally transported Plaintiff in the van. Plaintiff's sworn statement that Defendants intentionally deprived him of a wheelchair to walk to the infirmary, although contradicted by Defendants, must be assumed to be true for purposes of this motion. Defendants argue that they did not put Plaintiff at a substantial risk of suffering serious harm, however. With respect to the ride in the van, the evidence from medical

1  professionals --- the surgeon, nurse, and discharge papers – indicated that Plaintiff was medically

2  fit to ride in the van.  However, Plaintiff's own testimony shows that the ride caused him very

3  severe pain.  The pain itself, as opposed to some exacerbated or new injury, is a form of harm, and

4  severe pain could reasonably be considered serious harm, such that a reasonable trier of fact could

5  find conditions that posed a substantial risk of causing Plaintiff severe pain would satisfy the

6  second element of his Due Process claim.  *Cf. McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

7  1992) (under Eighth Amendment, prison officials the avoiding unnecessary pain is a serious

8  medical need).  Plaintiff's testimony that the ride caused him very severe pain, if true, would

9  establish that the ride presented a substantial risk of serious harm (i.e. the pain itself).  The same

10 can be said regarding Plaintiff's testimony that walking from the van to the infirmary caused him

11 serious pain.  Therefore, such testimony creates a triable issue on the second element as to the ride

12 in the van and the walk to the infirmary.

13       There is no triable issue that the van ride satisfied the third element, however, because

14 there is no evidence that Defendants failed to take objectively reasonable and available measures

15 to abate the risk of serious harm to Plaintiff.  Defendants decided to take Plaintiff in the van based

16 on a nurse telling them that it would be safe to do so --- after the Defendants described the seats in

17 the van --- and that no ambulance was necessary.  As they were not medical professionals, they

18 reasonably relied on the advice of a medical professional regarding Plaintiff's medical needs vis-à-

19 vis transportation.  The discharge papers did not place any limits on Plaintiff's transportation, and

20 there is no evidence that any guidance or orders from any medical professional indicated that

21 Plaintiff's safety required transportation in an ambulance.  Defendants took additional measures to

22 mitigate risks to Plaintiff by uncuffing one of his hands for the ride, requesting a wheelchair for

23 his transportation to the van, selecting the most accessible seat in the van, providing a sandbag and

24 physical assistance to help him get into the van more easily and with more stability, and placing

25 him in a part of the van that was small enough to lower the risk of Plaintiff being injured if he

26 became unstable.  The surgical collar further mitigated the risk of neck injury.

27       Plaintiff complains that Defendants failed to prevent the pain from the bumps in the road.

28 Before the ride, Defendants reasonably could believe that although walking and standing caused

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff pain, the van ride would not because if it were unduly painful for Plaintiff's condition, the

2   nurse would not have authorized it or the discharge papers would have cautioned against it.

3   During the ride, Defendants only experienced bumps and heard the pain noises Plaintiff made

4   while they crossed the Dumbarton Bridge --- a relatively brief portion of the ride.  Stopping on the

5   bridge and waiting for an ambulance would have been a safety risk because they would have had

6   to wait, get out, and move Plaintiff all on the side of a highway with cars going at high speeds.  A

7   reasonable officer under those circumstances would not have stopped on the bridge, and then

8   would not have sought an ambulance after the bridge when there was no longer any indication of

9   bumps or Plaintiff being in pain.

10      Plaintiff's statement that Defendants deliberately refused to look for a wheelchair after

11  they arrived back at the jail, as noted above, must be viewed as true.  If true, this is sufficient for a

12  reasonable factfinder to conclude that Defendants did not take the objectively reasonable step of

13  getting a wheelchair to bring Plaintiff from the van to the infirmary, and thereby prevent him from

14  suffering serious pain from walking.

15      There is also no triable factual issue regarding the fourth element, either as to the van ride

16  or the walk to the .  Plaintiff asserts that the injury caused by the van ride was that the surgical

17  hardware shifted and there was a "dip" in his neck.  However, as Plaintiff conceded in his

18  deposition, no doctor or other medical professional --- including all those who treated him at

19  Stanford and the jail --- has found that the van ride caused the surgical hardware to shift,

20  exacerbated his surgical wounds in any way, or caused him to suffer a new injury.  Indeed, the

21  doctor and surgeon who examined him and his x-rays following the van ride opined that his

22  stenosis had improved and the surgical hardware had not shifted.  Plaintiff's own lay opinion to

23  the contrary does not, without more, create a triable issue of fact.  *See Franklin v. Oregon*, 662

24  F.2d 1337, 1344 (9th Cir. 1981) (in the Eighth Amendment context, a "difference of opinion

25  between a prisoner-patient and prison medical authorities regarding treatment does not give rise to

26  a § 1983 claim").  Plaintiff's asserts that his doctor in the jail clinic "hid" the shifted surgical

27  hardware from Plaintiff's surgeon.  The surgeon reviewed x-rays of Plaintiff's neck, however, and

28  Plaintiff does not explain how his doctor could have hidden something that was viewed under x-

1 ray.  As a result, no factfinder could reasonably find, without more evidence, that a shift in his

2 surgical hardware was hidden from or missed by the surgeon.

3      There is also no triable issue of fact as to whether Plaintiff was injured by the walk from

4 the van.  Indeed, there is no evidence whatsoever suggesting any injury caused by that walk.

5      As there are no triable factual issues on the third or fourth element of a due process claim

6 as to the van ride and on the fourth element as to the walk to the infirmary, Defendants are entitled

7 to summary judgment on Plaintiff's claims.

8 **CONCLUSION**

9      For the reasons discussed above, the motion for summary judgment is GRANTED.

10 Plaintiff's motion to subpoena a witness to trial is DENIED as moot.

11      The Clerk shall enter judgment and close the file.

12      **IT IS SO ORDERED.**

13 Dated: June 21, 2022

14

15 _____

16 JEFFREY S. WHITE
United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California